UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 1647 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| PANTCHO PANTCHEV, individually and d/b/a ELPA, | ) | |
| INC. d/b/a CHICAGO BY NIGHT, and ELPA, INC. | ) | |
| d/b/a CHICAGO BY NIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

J&J Sports Productions, Inc., alleges that Pantcho Pantchev and Elpa, Inc. (together, "Pantchev"), exhibited without authorization J&J's television broadcast, *"The Event": Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program*, at their restaurant. Doc. 1. The complaint advances claims under the Communications Act of 1934, 47 U.S.C. § 605 *et seq.*, the Cable and Television Consumer Protection and Competition Act of 1992 ("CTCPCA"), 47 U.S.C. § 553 *et seq.*, and the Illinois common law of conversion. Patchev moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Doc. 16. The court denied the Rule 12(b)(6) motion and granted the 12(b)(5) motion, but gave J&J an opportunity to effect proper service. Docs. 32, 34-35. J&J did so, Docs. 36-37, the parties engaged in discovery, Docs. 40-41, 45, 49.

Now before the court is J&J's motion for summary judgment on the Communications Act claim. Docs. 52, 54. Because the record would permit a reasonable jury to find that Pantchev was authorized to exhibit the broadcast at the restaurant, and therefore that Pantchev did not violate the Communications Act, J&J's motion is denied.

1

**Background**

The facts are stated as favorably to Pantchev as the record and Local Rule 56.1 allow. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). The court notes that J&J did not file a Local Rule 56.1(a)(3) response to Pantchev's Local Rule 56.1(b)(3)(C) statement of additional facts. Doc. 57 at pp. 7-9. Accordingly, the facts set forth in Pantchev's Local Rule 56.1(b)(3)(C) statement are deemed admitted for purposes of summary judgment. *See* N.D. Ill. L.R. 56.1(a)(3) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

J&J, a distributor of viewing rights to televised sporting events, contracted for and was granted exclusive nationwide television distribution rights to *"The Event": Manny Pacquiao v. Joshua Clottey; WBO Welterweight Championship Fight Program* ("the Program"), which took place on March 13, 2010. Doc. 57 at pp. 2-3, ¶ 4; Doc. 62 (the contract). Pantchev's Local Rule 56.1(b)(3)(B) response acknowledges the existence of the contract granting J&J exclusive distribution rights, but disputes its legality. Doc. 57 at pp. 2-3, ¶ 4. Because "[i]t is inappropriate to make legal arguments in a Rule 56.1 statement" or response, *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008), the court will disregard the legal argument in Pantchev's Local Rule 56.1(b)(3)(B) response. *See Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010) ("the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses") (citation omitted).

Pantchev owns and manages Chicago By Night, a restaurant located at 5600 West Belmont Avenue in Chicago, Illinois. Doc. 57 at pp. 1-3, ¶¶ 2-3, 5. The restaurant has a maximum occupancy of 98 people. *Id*. at pp. 6-7, ¶ 26. Dish Network, the provider of satellite television services to Chicago By Night, installed the cables and other equipment that allowed the restaurant to receive satellite television services. *Id*. at p. 7, ¶¶ 3, 4. Pantchev received the Dish Network bills for Chicago By Night at his home in Mettawa, Illinois; he had a separate Dish Network account for his home. *Id*. at p. 7, ¶¶ 5-6.

On or about March 13, 2010, Pantchev called Dish Network to order the Program for Chicago By Night's service address at 5600 West Belmont Avenue; Dish Network charged Pantchev $49.95, the residential rate. *Id*. at p. 6, ¶ 23; *id*. at p. 7, ¶ 7. The commercial rate for an establishment of Chicago By Night's size would have been $1800. *Id*. at pp. 3-4, ¶ 8; Doc. 53-3. (The court will set aside Pantchev's hearsay and authentication objections to the consideration of this fact because it is contextually important to understanding J&J's theory of the case and also because J&J's motion is denied even though the fact is being considered.) The Program was broadcast on Chicago By Night's five televisions on March 13, 2010. Doc. 57 at pp. 2-4, 6, ¶¶ 4, 9, 25. Over forty patrons watched the Program at the restaurant. *Id*. at pp. 3-4, ¶¶ 6, 10.

J&J's Local Rule 56.1(a)(3) statement asserts that Elpa and Chicago By Night are "not listed or referenced anywhere in the invoice" that Dish Network sent Pantchev for the Program. Doc. 53 at ¶ 22. Pantchev's Local Rule 56.1(b)(3)(B) response disputes that assertion, maintaining that the service address listed at the top right corner of the invoice is the address for Chicago By Night. Doc. 57 at p. 6, ¶ 22. The invoice lists Pantchev as the account holder and lists his mailing address in Mettawa, but it also lists the "Service Address" as 5600 West Belmont Avenue in Chicago, which is Chicago By Night's address. Doc. 53-4 at 1.

Accordingly, resolving the dispute in Pantchev's favor, the invoice sent by Dish Network for the Program lists the "Service Address" as Chicago By Night's address in Chicago. Pantchev duly paid the invoice. Doc. 57 at pp. 7-8, ¶ 8.

**Discussion**

The complaint alleges that Pantchev violated the Communications Act, 47 U.S.C. § 605, by "unlawfully publish[ing], divulg[ing] and exhibit[ing] the Program" at Chicago By Night, "[w]ith full knowledge that the Program was not to be intercepted, received and exhibited by entities unauthorized to do so." Doc. 1 at ¶ 13. At bottom, J&J's claim is that Pantchev acted unlawfully because he paid only the $49.95 residential rate for the Program when, given that he displayed the Program at Chicago By Night, he should have paid the $1800 commercial rate.

The key issue here is whether Pantchev was authorized to display the Program at Chicago By Night for the price that he was charged. Section 605 states that "no person receiving … any … communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through *authorized channels of transmission or reception*." 47 U.S.C. § 605(a) (emphasis added). Although § 605(a) refers to "communication by wire or radio," the statute was amended to cover satellite cable programming. *See* 47 U.S.C. § 605(d)(6); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 912 (6th Cir. 2001). In evaluating a § 605(a) claim, the court "looks at the relationship between the original sender and the ultimate receiver in determining whether the communication is authorized." *Nat'l Satellite Sports*, 253 F.3d at 917.

The original sender here was J&J, the ultimate receiver was Pantchev, and their intermediary was Dish Network. The summary judgment record, viewed with all factual disputes resolved and reasonable inferences drawn in Pantchev's favor, would allow a reasonable

jury to conclude that Pantchev was authorized to show the Program at Chicago By Night upon paying the $49.95 rate charged by Dish Network. The pertinent facts and inferences are these: (1) Pantchev had a commercial account with Dish Network for the restaurant; (2) by virtue of having installed the cables and other equipment at the restaurant, Dish Network knew that the restaurant was a commercial establishment, not a residence; (3) Pantchev ordered the Program from Dish Network on the commercial account for the restaurant; and (4) Dish Network charged Pantchev $49.95, and did not instruct Pantchev that he had to pay $1800 to either Dish Network or to J&J directly if he wanted to display the Program at the restaurant. Because a reasonable jury could find that Pantchev was authorized to show the Program at the restaurant for the price he paid, it could find for Pantchev on J&J's § 605(a) claim. *See J&J Sports Prods., Inc. v. Gidha*, 2011 WL 3439205, at *3 (E.D. Cal. Aug. 4, 2011) (vacating a default judgment on the plaintiff's § 605(a) claim where the defendants, restaurant owners who broadcasted a televised boxing match in their restaurant, "argue[d] that they maintained a commercial account with DirecTV and legally purchased the Program" and that "DirecTV improperly billed them for the residential rate as opposed to the commercial rate"); *J&J Sports Prods., Inc. v. 4326 Kurz, Ltd.*, 2009 WL 1886124, at *7 (E.D. Pa. June 30, 2009) (suggesting that the defendant restaurant could have prevailed on the plaintiff's § 605(a) claim had the defendant ordered the boxing match "using a commercial DirecTV account").

J&J might have argued in support of summary judgment that it did not authorize Dish Network to sell the Program to commercial establishments, and that Dish Network's lack of authorization defeats Pantchev's submission that it was authorized by J&J—the "original sender," *Nat'l Satellite Sports*, 253 F.3d at 917—to show the Program at the restaurant. *See J&J Sports Prods., Inc. v. Phelan*, 2009 WL 3748107, at *10 (E.D. Cal. Nov. 5, 2009) ("Defendant

5

posits that Comcast gave its 'consent' to Defendant's reception of the Boxing Program signal, and this consent means that Defendant's subsequent 'divulg[ing] or publish[ing]' of the Boxing Program, by exhibiting it to her patrons, was done 'through authorized channels of transmission or reception.' Defendant's argument fails to address Comcast's inability to consent to the transmission of the Boxing Program to commercial establishments. If [J&J] had the exclusive right to license the transmission of the Boxing Program to commercial establishments such as Frankie's, and if Comcast did not acquire the right or permission to do so [from J&J], then Comcast could not have consented to and authorized Defendant's reception of the Boxing Program at Frankie's. In that case, Defendant's airing of the Boxing Program at Frankie's could not have been 'through authorized channels of transmission or reception.'"). J&J did not make that argument, thereby forfeiting the point for purposes of summary judgment; in any event, the summary judgment record provides no basis to conclude that J&J did not authorize Dish Network to transmit the Program to commercial customers, either at all or for $49.95. This line of argument will be open to J&J at trial, and the argument's merits can be considered then. Also open to J&J at trial will be any other lines of argument that it did not press on summary judgment. *See Joe Hand Promotions, Inc. v. Jorkay, LLC*, 2013 WL 2447867, at *2 (E.D.N.C. June 5, 2013) ("Although defendants purchased the event from DirecTV, they do not avoid liability for broadcasting the event at their establishment without the authorization of the exclusive licensee."); *Garden City Boxing Club, Inc. v. Vinson*, 2003 WL 22077958, at *2 (N.D. Tex. Sept. 3, 2003) ("The fact that [the owner of the bar] may have purchased and lawfully received the Lewis-Tyson fight from DirecTV does not immunize her from liability [under § 605(a)] for then broadcasting the event to patrons at her bar without obtaining authorization from plaintiff, the exclusive licensee."); *Kingvision Pay Per View, Ltd. v. Duermeier*, 24 F. Supp. 2d

6

1179, 1181 (D. Kan. 1998) ("The local cable provider, TCI, had the right to provide the [boxing match] to residential cable customers but it did not provide live pay per view programming to commercial establishments. Therefore, for a commercial establishment to lawfully receive the [boxing match], it had to contract with Kingvision [the exclusive licensee].").

**Conclusion**

For the foregoing reasons, J&J's summary judgment motion is denied. Because summary judgment is denied on the ground that a reasonable jury could find that Pantchev was authorized to show the Program at the restaurant, there is no need to consider Pantchev's alternative grounds for defeating J&J's motion. Pantchev's opposition brief purports to cross-move for summary judgment. Doc. 59 at 2-8. The "cross-motion" is denied; it fails to comply with Local Rule 56.1, as it was not accompanied by a Local Rule 56.1(a)(3) statement, and it was untimely in any event, coming four weeks after the dispositive motion deadline, Doc. 51.

November 15, 2013

United States District Judge